UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GREGORY AREGOOD, JR., *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 1:14-cv-00274-SEB-TAB |
| | ) | |
| GIVAUDAN FLAVORS CORPORATION fka | ) | |
| partner in the partnership Tastemaker, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

## DISCOVERY ORDER

### I.    Introduction

The lawyers in this litigation rivalry seem to have forgotten how to resolve discovery disputes as would be expected of seasoned counsel.  Instead, they have reverted to child-like behavior, as evidenced by the numerous discovery motions, including motions for sanctions, now pending.  A resolution commensurate with the conduct displayed in this most recent dust-up would be to send both sides to their rooms without dinner.  While the Court lacks the ability to impose such a fitting solution, the Court does send counsel back to their litigation files without the sanctions they seek.

Almost six months have passed since this Court held a discovery hearing and issued an order, yet the parties continue sparring over their discovery responses.  In the motions presently before this Court, the parties point fingers at who started it, and insist that the Court rule on their motions first.  Not only do the parties disagree on what constitutes a full discovery response, they also disagree on cooperating.  As a result, discovery disputes, rather than the merits, are now the focus of this litigation.

Defendant Givauden Flavors Corporation wants its motions ruled on first because it believes Plaintiffs are playing childish games.  Plaintiffs want their motions ruled on first because, like an impatient adolescent, they claim they have been waiting longer for discovery responses.  In an effort to get this case back on course and treat each party equally, this order addresses all pending discovery motions.

## II.   Givauden's motion to enforce discovery order and for sanctions

At issue in Givauden's motion to enforce discovery order and for sanctions [Filing No. 360] is the Court's November 2015 order that "[b]y December 11, 2015, Plaintiffs shall provide to Givauden all documents responsive to Requests for Production Nos. 17 and 18, served December 1, 2014."  [Filing No. 338.]  Request No. 17 asks that Plaintiffs produce documents "constituting or reflecting any communications … between you, your attorneys or your experts and any governmental agency."  [Filing No. 365, at ECF p. 4.]  Request No. 18 asks that Plaintiffs produce documents that "you, your attorneys or your experts provided to or received from any governmental agency."  *Id.*  Both requests seek documents from 1995 to the present "relating or referring to diacetyl, 'diacetyl substitutes,' butter flavoring, popcorn, or injuries, diseases, or conditions alleged in the complaint."  *Id.*

Since the November 2015 order, Plaintiffs apparently produced some 21,000 pages of documents to Givauden.  However, Givauden argues that Plaintiffs have not complied with the order because their responses are still incomplete in some respects.  Essentially, Givauden asks the Court to determine that Plaintiffs are holding back some documents in bad faith and order Plaintiffs to comply with the discovery order by producing these documents, or face sanctions for failing to comply.

2

Givauden proceeds to propose a series of sanctions that are hardly childsplay.  For example, Givauden asks the Court to "establish as a matter of fact and law that Plaintiffs' experts and/or their counsel improperly influenced the findings and conclusions of the Jasper investigation" and to prohibit Plaintiffs from "introducing or mentioning any evidence, testimony or argument relating to the Jasper Investigation."  [Filing No. 361, at ECF p. 3.]  Givauden also asks the Court to prohibit Plaintiffs from introducing any testimony, opinions, or documents from Drs. Egilman and Parmet or "from any witness that repeats, paraphrases or relies upon any statements, findings, data, records, opinions, work or analysis performed by Drs. Egilman and/or Parmet."  [Filing No. 361, at ECF p. 4.]

As an initial matter, these sweeping sanctions are inappropriate.  Sanctions "should be proportioned to the gravity of the offense."  *Allen v. Chicago Transit Auth.,* 317 F.3d 696, 703 (7th Cir. 2003).  Plaintiffs' alleged offense is making an incomplete discovery response. Givauden's proposed sanctions take direct aim at essential parts of Plaintiffs' claims, significantly outweighing the alleged offense.  Givauden's proposed sanctions would doom Plaintiffs' claims.  The possibility of securing these sanctions may be the motivation for Givauden's insistence that Plaintiffs' responses are incomplete.  In fairness, however, Plaintiffs have reluctantly, and only upon prodding by the Court, produced documents to Givauden. Nevertheless, the Court does not find sanctions, particularly those laid out by Givauden, are proportional or helpful in resolving this dispute.

Givauden argues that there is no question Plaintiffs failed to comply with the November 2015 order.  Yet, Givauden is less than specific about what documents it is missing.  Based on the briefs, Givauden is clearly pursuing communications showing that Plaintiffs' experts exerted undue influence on governmental agencies to craft the "popcorn lung" litigation.  But such undue

influence is Givauden's speculation, which the Court cannot order Plaintiffs to produce.  By now, more than a year after Givauden served Plaintiffs with this discovery request, after countless conferences, motions, a hearing, and an order, generic terms from the production requests such as "documents" and "communications" don't help resolve the present dispute.  At this stage, the Court needs something more concrete or this dispute could continue in perpetuity.  If Givauden asserts that certain documents are clearly missing, it should be able to tell Plaintiffs and the Court what it wants with some degree of specificity.  As such, only the specific documents that Givauden alleges are missing are addressed in this order.

Lawyers have a duty to act in good faith in complying with their discovery obligations. *Johnson v. J.B. Hunt Transport, Inc.*, 280 F.3d 1125, 1132 (7th Cir. 2002).  A party demonstrates a good faith effort by making a reasonable inquiry and providing a sufficient explanation for what it cannot produce.  *Logan v. Gary Cmty. Sch. Corp.*, No. 2:07-CV-431-JVB-PRC, 2008 WL 5062802, at *2 (N.D. Ind. Nov. 21, 2008).  This is sufficient to satisfy its obligations to respond under the federal rules.  *Id.*

## A.    Dr. Egilman

Plaintiffs withdrew Dr. Egilman as an expert in this case.  Givauden argues that regardless of whether Plaintiffs use him as an expert, it is entitled to all documents related to Dr. Egilman's activities because they are inextricably intertwined with general causation "proof." [Filing No. 369, at ECF p. 4.]  Plaintiffs argue that Givauden cannot now broaden the scope of its discovery request to include anyone it deems relevant in this case.  The Court agrees with Plaintiffs.

While Plaintiffs may have tactically removed Dr. Egilman as an expert, and while they may benefit from his past involvement, Givauden moved to enforce the November 2015 order,

which requires Plaintiffs to respond to its production Requests Nos. 17 and 18.  Neither of these

requests asks for Dr. Egilman's documents.  Rather, the requests ask for documents from "you,

your attorneys or your experts."  Dr. Egilman is none of these.  Givauden cannot dictate what

experts Plaintiff will or will not use any more than it can demonstrate that Plaintiffs have

provided an insufficient explanation as to why Dr. Egilman's documents are not included in their

response.  None of Dr. Egilman's documents is within the scope of Givauden's discovery

requests so long as he is not Plaintiffs' expert.  Thus, nothing in the November 2015 discovery

order can make Plaintiffs produce Dr. Egilman's documents.

### B.    Dr. Parmet

Plaintiffs produced a letter between Dr. Parmet and OSHA along with a box of medical

records.  Plaintiffs claim that Dr. Parmet failed to retain copies of all other documents exchanged

with NIOSH and OSHA.  Givauden argues that Plaintiffs failed to make a reasonable search for

these documents.  The Court agrees with Givauden.

Givauden seeks the following documents and communications from Dr. Parmet's files:

1. The box of medical records for the original 8 or 9 workers that Dr. Parmet
   reviewed and then provided to the Missouri Department of Health and NIOSH,
   which he testified at every case demonstrated an "epidemic" of "bronchiolitis
   obliterans";
2. Dr. Parmet's copies of the industrial hygiene plan, industrial hygiene data,
   including air sampling, and medical surveillance data from the NIOSH
   investigation of the Jasper plant, in which he testified he was intimately
   involved;
3. Dr. Parmet's multiple email communications with the Missouri Department of
   Health and NIOSH in the course of his participation in the Jasper investigation;
   and
4. Dr. Parmet's reports on the 8 or 9 workers that he provided to NIOSH.

[Filing No. 361, at ECF p. 13.]

Plaintiffs do not deny that these documents are within the scope of the November 2015

order, but argue that they cannot produce these documents because Dr. Parmet gave all his

records to NIOSH fifteen years ago and they were never returned.[1]  While this may be true, there are other ways to obtain and produce these documents.  For example, Givauden points out that in at least one prior case, Dr. Parmet was able to obtain some of his files from his prior employer, even after he stopped working there.  [Filing No. 369, at ECF p. 12.]  Givauden also points out that Dr. Parmet testified a few years ago that he had maintained his records relating to the Jasper workers.  [Filing No. 369, at ECF p. 13.]  Essentially, Plaintiffs' explanation for why they cannot produce Dr. Parmet's files is that they have not made an effort to make a reasonable search.  That is, Plaintiffs are satisfied to conclude that the files were irretrievably sent away fifteen years ago. In the face of evidence that Dr. Parmet has obtained these documents in the past, this is not sufficient to satisfy Plaintiffs' obligations under the federal rules.

Plaintiffs must search for and produce items one, three, and four outlined above because they are identified as communications known to be exchanged between Dr. Parmet and a governmental agency.  However, the second item should only be produced to the extent it was exchanged between Dr. Parmet and a governmental agency.  These items are within the scope of discovery and covered by the November 2015 order.  If Dr. Parmet will testify that he diagnosed the nine former Jasper workers with bronchitis obliterans and shared and discussed his investigation with governmental agencies, Plaintiffs must produce those records.  The Court acknowledges Givauden's concern that these records are particularly important because the workers were only diagnosed with bronchitis obliterans by Dr. Parmet and not by their regular

---

[1] Plaintiffs somewhat dispute the scope because they contend that counsel for the nine Jasper workers was not associated with the firm of Plaintiffs' counsel, so even if the firm had those records, they would not be responsive to Requests Nos. 17 and 18.  However, Dr. Parmet is Plaintiffs' expert, making any communications between Dr. Parmet and the government subject to production.  As the Court has previously explained, Plaintiffs cannot avoid producing these documents because they received them indirectly.

physicians.  Accordingly, the November 2015 order requires Plaintiffs to search for and produce these items.  The Court grants Givauden's motion to enforce this part of the order.

### C.      Dr. Pue and other experts

Plaintiffs claim that only Drs. Pue and Parmet have been retained as experts in this case. As such, the November 2015 order also covers any of Dr. Pue's documents exchanged with a governmental agency.  However, Givauden does not ask Plaintiff to produce documents related to Dr. Pue.  Rather, Givauden argues that Plaintiffs should not be allowed to tactically bench other experts they have routinely relied on in past cases.  This is clearly beyond the scope of the November 2015 order, but in addressing the argument, certainly both sides are allowed to select (or in this case, not select) certain experts as a matter of trial strategy.  While Plaintiffs' formulaic cases add a measure of predictability to the present action, it does not allow Givauden to dictate which experts Plaintiffs select.  In short, Givauden's requests for production are framed to cover only the experts Plaintiffs actually select and Plaintiffs are entitled to make a strategic selection of experts.  If Plaintiffs decide only Drs. Pue and Parmet will serve as experts in this case, Givauden is only entitled to production related to Drs. Pue and Parmet under the framework of their discovery request.  Of course, if Plaintiffs add experts, they will need to supplement their response.  However, the Court finds nothing here to enforce relative to the November 2015 order.

## III.   Plaintiffs' motion to compel

At issue in Plaintiffs' motion to compel [Filing No. 377]  is Givauden's response to Plaintiffs' Second Request for Production of Documents No. 1, in which Plaintiffs request "documents constituting or reflecting any communications" between Givauden and "any governmental agency, including … NIOSH … Ohio EPA and/or its Division of Air Pollution

Control … from 1995 to the present." [Filing No. 378-2, at ECF p. 13.]  The documents are limited to those "relating or referring to diacetyl, 'diacetyl substitutes,' butter flavorings, popcorn, or injuries, diseases, or conditions which have been alleged to occur from inhalation exposure to such ingredients and products." *Id.*

While Givauden produced some documents responsive to Plaintiffs' request, it refused to produce any responsive documents "related to general causation until the Plaintiffs complied with this Court's November 2015 Discovery Order." [Filing No. 385, at ECF p. 6.]  Givauden's production response pointed to documents identified in response to Plaintiffs' Interrogatories Nos. 11 and 16 and asserted that it "is gathering and will produce non-privileged documents containing responsive information." [Filing No. 378-2, at ECF p. 14.]  As Plaintiffs point out, and as Givauden seems to admit, this was not a complete response to Plaintiffs' production request.

A party may file a motion to compel a required disclosure upon "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a).  A required disclosure includes any information that a party may use to support its claims. Fed. R. Civ. P. 26(a)(1)(A).  "For good cause, the court may order discovery of any matter relevant" to the issues of the case. Fed. R. Civ. P. 26(b)(1).  "Thus, the scope of discovery should be broad in order to aid in the search for truth." *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 450 (N.D. Ill. 2006). Ultimately, this Court has "broad discretion in discovery matters." *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 646 (7th Cir. 2001).

Givauden characterizes Plaintiffs' motion to compel as a distraction from the merits, and accuses Plaintiffs of "playing a game of cat and mouse." [Filing No. 385, at ECF p. 1.] However, Givauden's incomplete response put Plaintiffs in the proper position to file a motion to

compel.  Givauden spends much of its brief re-arguing its own motion, ironically engaging in the same distracting conduct that it accuses of Plaintiffs.  Givauden also attempts to justify its incomplete response by name calling, discrediting Plaintiffs' claims as conspiracy theories and claiming Plaintiffs have devised imaginary arguments.  However, the fact remains that Givauden is intentionally withholding documents responsive to Plaintiffs' production request as leverage to make Plaintiffs produce the documents addressed above.  Givauden's arguments fail to mitigate its incomplete discovery response.[2]  Givauden did not make required disclosures.  It must therefore supplement and produce all responsive documents it previously withheld, including those related to general causation.  Plaintiffs' motion to compel is granted in this respect.

Plaintiffs' motion to compel also seeks "copies of communications exchanged between Givauden and governmental agencies."  [Filing No. 377.]  As with Givauden's motion, it is the Court's perspective that by now Plaintiffs should be able to tell the Court what it wants with some degree of specificity.  Similarly, only the specific documents Plaintiffs request are addressed.  Plaintiffs point to two items:

1.  The odor complaint referenced in Givauden's 1991 letter to the Southwestern Ohio Air Pollution Control Agency.

2.  Givauden's response to a February 2002 letter from NIOSH requesting the chemical content of two of Givauden's products.

---

[2] Givauden argues that the Court should enter a limited stay of discovery, retroactively relieving it from its obligation to make a complete production response, until Plaintiffs produce the documents it wants.  This argument is not well taken.  It is inappropriate for Givauden to wait for this motion to compel to ask for a retroactive stay purely for the sake of gamesmanship.  Moreover, a Rule 37 stay would favor Plaintiffs in this situation, as they moved to compel production.  Givauden's motion for a protective order is addressed below, but notably seeks the same result—retroactive relief from production to enhance its own position.  Such gaming is not a proper use of this Court's authority.

Plaintiffs point to other documents in their reply brief.  However, arguments not developed in a party's initial brief and raised in a meaningful way only in its reply are waived.  *U.S. v. Alhalabi,* *443 F.3d 605, 611 (7th Cir. 2006)*.  Not only do Plaintiffs fail to argue that Givauden should produce other documents in their initial brief, they mention them somewhat haphazardly in their reply.  Thus, the Court considers Plaintiffs' arguments concerning documents mentioned in the reply brief as waived.

Givauden argues the first item is not responsive to Plaintiffs' request for production because it relates to a letter concerning a vanilla odor, not a butter odor.  [Filing No. 385-3.] Plaintiffs point to a subsequent letter concerning sweet odors more generally, including "butter vanilla."  [Filing No. 390-1.]  While this is likely sufficient to bring the odor complaint within the category of "butter flavorings," the letter is from 1991.  Plaintiffs' request only seeks documents from 1995 to the present.  Thus, the first item is not responsive to Plaintiffs' request. Plaintiffs' motion to compel as to this item is denied.

However, the second item is within the framework of Plaintiffs' request for production. It is a communication from NIOSH in 2002 requesting information about two butter flavoring products.  [Filing No. 378-13.]  Givauden contends it was unaware of this item and will produce it if a responsive letter was indeed sent to NIOSH.  Accordingly, Givauden agrees that Plaintiffs' production request requires Givauden to search for and produce this item.  The Court therefore grants Plaintiffs' motion to compel as to this item.

Givauden's response is deficient to the extent that it is refusing production for purposes of leverage.  It cannot pick and choose documents to withhold for strategic purposes.  Therefore, Givauden must supplement its response to fully comply with Plaintiffs' Request for Production No. 1 in addition to producing its response to NIOSH.

IV.    **Plaintiffs' motion for sanctions**

The Court's November 2015 discovery order directed the parties to "confer on whether and to what extent the existing protective order may need to be modified" if Givauden were ordered to produce the formula for the replacement butter flavoring.  [Filing No. 338.]  The Court did not order the parties to confer on whether the replacement butter flavoring was relevant to this litigation.  The Court ordered the parties to confer on how Givauden could secure adequate protection from improper disclosure of the formula for the replacement butter flavoring.  [Filing No. 389-1.]  Yet, it appears Givauden could not move past relevancy.  After a series of unproductive emails, Givauden proved unwilling to consider producing the formula under any conditions.  In response, Plaintiffs filed their motion for sanctions.  [Filing No. 382.]  And as Givauden points out, Plaintiffs did so without first reaching out to the Magistrate Judge.

Plaintiffs argue that Givauden will not confer about structuring a protective order for the purpose of disclosing the formulas for the replacement butter flavorings.  Plaintiffs ask the Court to sanction Givauden for failing to confer by compelling it to either produce formulas or by modifying Givauden's proposed protective order.  Givauden contends that it did confer with Plaintiffs and points to a series of emails.

Despite obviously communicating with Plaintiffs, Givauden refused to confer with Plaintiffs about modifying their protective order.  When Plaintiffs approached Givauden to confer about modifying its protective order, they were immediately shut down.  After Givauden scolded Plaintiffs for failing to suggest a modification, it declared that no modification "could adequately protect against the improper disclosure of a formula that [Plaintiffs] cannot argue is even remotely relevant to [their] claims in this case."  [Filing No. 389-3.]  Conferring is not the same as communicating, as demonstrated by Givauden's monologue.  To confer, the parties must

actually consult with one another.  *See Loparex, LLC v. MPI Release Techs., LLC*, No. 1:09-CV-1411-JMS-TAB, 2011 WL 1871167, at *2 (S.D. Ind. May 16, 2011) ("[r]eal-time interaction often provides the best forum for hashing out disputes").  Givauden refused to consult with Plaintiffs about modifying its protective order.  Thus, Givauden did not confer with Plaintiffs and violated the Court's order.

Givauden argues that Plaintiffs' motion should be denied because Plaintiffs violated Local Rule 37-1 by failing to contact the Magistrate Judge before filing this motion.  However, this rule does not mandate denial of Plaintiffs' motion for failing to contact the Magistrate Judge prior to filing the motion.  It is unclear whether such conference would have changed Givauden's position, but it is clear that this matter will not be resolved without firm instruction from the Court.  Thus, the Court will not deny Plaintiffs' motion on this shortcoming, and instead examines the essence of the dispute.  *Cf. Houston v. C.G. Security Services*, No. 15-1518 __ F.3d __ (7th Cir. Apr. 25, 2016) (finding the district court did not abuse its discretion in holding one discovery conference satisfied the meet and confer requirement in the context of what the magistrate judge described as "obstreperous" conduct and "improper gamesmanship").

As explained above, this Court has "wide latitude in fashioning appropriate sanctions" for discovery order violations.  *e360 Insight, Inc. v. Spamhaus Project,* 658 F.3d 637, 642 (7th Cir. 2011).  Although a violation of the November 2015 order occurred, the Court declines to impose Plaintiffs' proposed sanctions.  The Court is not willing to *sua sponte* modify Givauden's protective order nor is it willing to allow Plaintiffs' attorneys access to Givauden's formulas, containing trade secrets, without an adequate protective order in place.  Plaintiffs have a history of publishing this type of information on the internet.  However, the Court has no confidence the parties will work together on proposing modifications.  What was originally intended to be a

collaborative process has mutated into a show of child-like stubbornness.  The Court thus orders Givauden to propose modifications to its protective order that offer adequate protections against the improper disclosure of the butter substitute formulas.

## V.     Givauden's motion for a protective order

As addressed in Plaintiffs' motion to compel above, Givauden does not deny that it could produce more documents responsive to Plaintiffs' Request No. 1.  However, Givauden so strongly opposes production that it filed a motion for a protective order.  [Filing No. 386.] Givauden relies on the now-familiar refrain that it should not have to produce documents to Plaintiffs until Plaintiffs produce documents to Givauden.  [Filing No. 385, at ECF p. 4.] Givauden' rationale is somewhat juvenile, not supported by case precedent, and not well taken.[3] Givauden's motion for a protective order essentially asks the Court to use its discretion and inherent authority to give Givauden the power to strong-arm Plaintiffs into producing a handful of documents.  But this type of gaming flies in the face of an appropriate protective order and has no place in federal court.  *Inland Am. (LIP) SUB, LLC v. Lauth*, No. 109-CV-00893-SEB-JMS, 2010 WL 670546, at *2 (S.D. Ind. Feb. 19, 2010).  The obvious purpose of Givauden's motion for a protective order is to stall its own production obligations in order to gain leverage over Plaintiffs in this discovery dispute.  From the Court's perspective, this is unproductive and runs counter to encouraging cooperation.  Accordingly, the Court denies Givauden's motion.  [Filing

---

[3] Further illustrating the immature nature of discovery disputes, Givauden filed a simple motion for leave to file a combined response and protective order.  [Filing No. 379.]  However, Plaintiffs immediately opposed the motion, sending it into a briefing schedule that ultimately rendered the motion moot.  Plaintiffs' opposition did nothing to deter Givauden from pursuing their protective order and merely set a new briefing schedule.  It is unclear what advantage Plaintiffs sought by filing their opposition, but it was not done in the interest of conserving resources.

No. 386.] Givauden is not excused from its immediate obligation to produce documents to Plaintiffs.

## VI.  Conclusion

In conclusion, the Court is disappointed with the parties and their counsel.  Neither party has completely fulfilled their discovery obligations, and both sides have allowed this avoidable dispute to deteriorate into some type of a playground brawl.  Plaintiffs have not fulfilled their obligation to produce documents from Dr. Parmet.  Givauden has not fulfilled its obligation to produce documents responsive to general causation.  While the Court declines to issue sanctions, the parties must stop refusing to comply with discovery rules and orders and must stop picking fights with each other.  Givauden's motion to enforce the November 2015 discovery order [Filing No. 360] is granted in part and denied in part.  Givauden's motion for oral argument [Filing No. 371] on this dispute is denied.  Plaintiffs' motion to compel [Filing No. 377] is granted in part and denied in part.  Plaintiffs' motion for sanctions [Filing No. 382] is denied.  Givauden's motion for a protective order [Filing No. 386] is denied.

Plaintiffs shall search for and within 21 days produce documents related to Dr. Parmet, outlined as items one, three, and four above, along with the second item, but only to the extent it was exchanged between Dr. Parmet and a governmental agency.  Likewise, Givauden shall search for and within 21 days produce its 2002 response to NIOSH and supplement its response to Request No. 1 with the documents it previously withheld.  For any of these items not produced, the non-producing counsel must advise opposing counsel in a verified writing, subject to Rule 11, of the efforts taken to search for and produce these items.  Also within 21

days, Givauden shall file a motion for a modified protective order with its proposed protections

against improper disclosure of the butter substitute formulas.

Date: 4/29/2016

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution to all electronically registered counsel of record via CM/ECF.