UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GREGORY AREGOOD, JR., *et al.* | )<br>)<br>) |
| Plaintiffs, | ) |
| vs. | ) No. 1:14-cv-00274-SEB-TAB |
| GIVAUDAN FLAVORS CORPORATION, *et al.* | )<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER ON GIVAUDAN'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' DESIGN DEFECT CLAIM

Pursuant to the Court's Order dated June 1, 2017, the remaining defendant, Givaudan Flavors Corporation ("Givaudan"), has moved for summary judgment on the Plaintiffs'[1] claim that they were injured because of Givaudan's defective design of butter flavors sold to Plaintiffs' employer ConAgra Snack Foods Group ("ConAgra"). [Dkt. No. 572.] For the reasons stated herein, the Motion for Summary Judgment is **GRANTED**.

### I. FACTUAL BACKGROUND

### A. PROCEDURAL HISTORY

On June 1, 2017, summary judgment was entered in favor of Givaudan on Counts I (strict liability – defective condition), II (failure to warn), and III (common law negligence)

---

[1] Plaintiffs are: Gregory Aregood, Jr., Rick Arndt, Sandy Arndt, David Black, Luther Daniel Cole, Rick Ellis, Rhonda Gross, Michele Hedden, Leslie Hinman, Robert Holbrook, Kathy Howard, Michael Hudak, Marvin Jeffrey, Grace Jones, Kent Korniak, Shirley Legrand, Stephen Lilly, Bob Maciejewski, Jr., Janalu Mckay, Randi Nagel, Laura Riley, Sharon Smith, William Tompkins, Brian Vallee, Dave Walker, Rebecca Yoder, and Linda Zickmund.

as to all Plaintiffs. Dkt. No. 570. All that remained thereafter was Plaintiffs' claim alleging defective design. *See*, *generally*, Compl. At the time, the jury trial as to the Stage 1 Plaintiffs was set to begin on Monday, July 17, 2017, Dkt. No. 539; and the final pretrial conference for same was set for Friday, June 16, 2017, Dkt. No. 554; and Givaudan's Motions *in Limine* (collectively, the "*Limine* motions") were fully briefed. In considering the *Limine* motions, the Court determined that at least one of them, Givaudan's Sixth Motion *in Limine* (directed to the absence of evidence or opinions regarding the alleged defective design or unreasonably dangerous condition of Givaudan's butter flavors), could be dispositive of Plaintiffs' remaining claim if it were granted. *See* Dkt. No. 571. Therefore, in order to give Plaintiffs the opportunity to address whether a material question of fact existed on all the elements of their defective design claim in light of Givaudan's Sixth Motion *in Limine*, the Court ordered summary judgment briefing on that claim. *Id.*

In its opening brief, Givaudan not only relied upon its Sixth Motion *in Limine*, it claimed that its First (directed to evidence or opinions based on a National Institute for Occupation Safety and Health ("NIOSH") air sampling method), Second (directed to evidence or opinions of general causation), and Third (directed to evidence or opinions of Charles Pue, M.D., on specific causation) Motions *in Limine*, if granted, would also be dispositive of Plaintiffs' remaining claim. *See*, *generally*, Dkt. No. 573. In response, Plaintiffs re-asserted their arguments on their failure to warn claim, affirmatively seeking reconsideration of that claim; and then argued the merits of all of the Motions *in Limine*

raised by Givaudan. *See* Dkt. No. 583 at 19-54.[2] Because we conclude that Givaudan's Sixth Motion *in Limine* is dispositive of Plaintiffs' remaining claim, we decline to address the other *Limine* Motions.

## B. FACTUAL BACKGROUND

The undisputed facts and the facts taken in the light most favorable to the Plaintiffs are summarized below. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).

Plaintiffs worked in various capacities at a ConAgra microwave popcorn packaging facility located in Rensselear, Indiana (the "Plant"). Dkt. No. 457 at 1. Plaintiffs allege that their exposure to butter flavors that contained diacetyl, which were sold to ConAgra by Givaudan, caused them to develop respiratory injuries. *Id.*

Epidemiology is the study of the distribution and determinants (such as causes and risk factors) of health-related states and events in specified populations. Dkt. No. 573 at 3-4. Occupational medicine addresses the detection, prevention, and treatment of diseases caused by hazards to which workers are exposed in their workplaces. *Id.* at 4.

Allen J. Parmet, M.D., M.P.H. ("Dr. Parmet"), is a board certified occupational medicine physician whom Plaintiffs designated as an expert. *Id.* Dr. Parmet is not a food scientist or a flavor chemist, and he never designed a butter flavor. *Id.* at 5. Dr. Parmet testified that if adequate engineering controls or respirators or proper processes are

---

[2] To streamline this Order, unless otherwise noted, the Court cites to the ECF page number or numbers where the relevant facts are set forth in the parties' briefs and such citation should be presumed to include the exhibit(s) cited therein.

implemented, butter flavors that contain diacetyl can be used safely. Dkt. No. 573-1, Parmet Dep. at pp.121-22.

Robert J. Harrison, M.D., M.P.H. ("Dr. Harrison"), is board certified in preventative medicine and occupational medicine and practices in the field of epidemiology; Plaintiffs identified Dr. Harrison as an expert. Dkt. No. 573 at 4. He has been treating patients for 30 years and has seen thousands of workers with occupational lung disease. *Id.* Dr. Harrison has no background or training in food science and is not qualified to design a butter flavor. *Id.* Dr. Harrison testified that he is not offering an opinion on whether the butter flavor that Givaudan supplied to ConAgra was defective in design. Dkt. No. 585-15, Harrison Dep. at p.81. He further testified that butter flavors that contain diacetyl could be used safely if the production process were completely enclosed. *Id.* at p.80.

Charles A. Pue, M.D. ("Dr. Pue"), also designated by Plaintiffs as an expert, is not a food scientist or a flavor chemist and has never designed a butter flavor. Dkt. No. 573 at 5. He has never performed any analysis of butter flavors or diacetyl because that is beyond the scope of his practice. *Id.*

Givaudan designated David Bratton ("Bratton") as an expert witness. Dkt. No. 583 at 14. Plaintiffs reserved the right to use expert testimony from any expert witness designated by Givaudan. *Id.* Bratton is the most senior flavor chemist at Givaudan, and in 1992, he began to make artificial butter flavors there. *Id.* Bratton testified that during his time at Givaudan developing butter flavors, he had no knowledge that there were workers with lung disease in its plants or that experts claimed that diacetyl could cause severe lung disease. *Id.* at 15. There were no toxicologists working in Bratton's lab to help create

butter flavors. *Id.* Bratton testified that the flavors he developed for sale to ConAgra were custom-made exclusively for that company and that ConAgra ultimately decided whether the taste and smell were acceptable. *Id.*

In a 2006 deposition taken in another case, Bratton testified that Givaudan made and sold diacetyl-free butter flavors for popcorn in 1991. Dkt. No. 583-6, Bratton 2006 Dep. at pp.12-13. In a 2010 deposition taken in yet another case, Bratton testified that ingredients that were used in diacetyl-free butter flavors in 2010 were available in 1989. Dkt. No. 583-7, Bratton 2010 Dep. at pp.15-16. In his most recent deposition in 2017, Bratton testified that "if there was a consideration for hazard with diacetyl then that would be eliminated along with it being gotten rid of." Dkt. No. 583-1, Bratton 2017 Dep. at p.77.

Bratton confirmed that Givaudan made diacetyl-free butter flavors that were acceptable to ConAgra in 2007. Dkt. No. 585-31, Bratton Dep. at pp.33-34; Dkt. No. 583-1, Bratton 2017 Dep. at 74-76. Bratton testified that no one had ever discussed issues concerning occupational exposures to diacetyl or diacetyl-containing products, or a NIOSH report that employees exposed to flavoring containing diacetyl were at risk of developing severe occupational lung disease. Dkt. No. 583-1, Bratton 2017 Dep. at pp.73-74. However, these issues and report were apparently conveyed by Givaudan to ConAgra at some point, along with suggested replacements for diacetyl-containing butter flavors. *Id.* at 73-76.

## II. **SUMMARY JUDGMENT STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather it is an integral part of the federal rules as a whole, which are designed

to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); s*ee also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides in relevant part: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court must draw all reasonable inferences from undisputed facts in favor of the nonmoving party and view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v.*

*Fromm,* 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson,* 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.,* 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the Court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 & n. 3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. ANALYSIS

Plaintiffs' remaining claim is brought under the Indiana Products Liability Act ("IPLA"). Generally, any claim under the IPLA has five elements: (1) harm, (2) to a foreseeable user or consumer, (3) by a product that was sold "in a defective condition unreasonably dangerous to any user or consumer," (4) by a defendant that was in the business of selling the product, and (5) the product reached the user or consumer without alteration. Ind. Code § 34-20-2-1. *See also Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015). A plaintiff may satisfy the third element by showing a design defect, a manufacturing defect, or a failure to warn. *See Piltch*, 778 F.3d at 632 (citing *Hathaway v. Cintas Corp. Serv., Inc.*, 903 F. Supp. 2d 669, 673 (N.D. Ind. 2012); *Natural Gas*

7

*Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 161 (Ind. Ct. App. 1997)). With respect to a design defect claim, a plaintiff must also show a breach of the duty of care, or negligence. *Id.* (citing *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007)).

Plaintiffs argue that there is a question of fact as to whether or not Givaudan's butter flavors were defectively designed because Plaintiffs' experts opine that butter flavors that contain diacetyl cause lung diseases, and Givaudan's expert (Bratton) testified that diacetyl-free butter flavors were available and used by some popcorn makers as early as 1989.[3] Dkt. No. 583 at 17-24. However, under Indiana law, to show a defective design, Plaintiffs "'must compare the costs and benefits of alternative designs' and 'show that another design not only could have prevented the injury but also was cost-effective under general negligence principles.'" *Piltch*, 778 F.3d at 632 (quoting *Pries v. Honda Motor Co.*, 31 F.3d 543, 545-56 (7th Cir. 1994)). Although Plaintiffs argue otherwise, "expert testimony on an issue is required when the issue is not within the understanding of a lay person." *Id.* (citing *Daub v. Daub*, 629 N.E.2d 873, 878 (Ind. Ct. App. 1994); referencing *Owens v. Ford Motor Co.*, 297 F. Supp. 2d 1099, 1103-04 (S.D. Ind. 2003)). Here, presuming without deciding that Plaintiffs' causation experts' testimony is admissible, Plaintiffs provide no expert testimony on the costs and benefits of a diacetyl-free butter

---

[3] Plaintiffs also resurrect their failure to warn claim and ask that the Court reconsider its decision to grant summary judgment on that claim in favor of Givaudan. Dkt. No. 583 at 20-23. Plaintiffs present no new evidence or argument in support of this claim; therefore, the Court declines to reconsider the prior order. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (stating that a motion to reconsider is "valuable" when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension").

8

flavor or that the diacetyl-free butter flavors that existed prior to 2007 were cost-effective alternatives under general negligence principles. These elements cannot be "assumed" from Plaintiffs' causation evidence or Bratton's testimony. The costs and benefits of diacetyl-free butter flavors, or their cost effectiveness, is not common knowledge. Further, the fact that a diacetyl-free alternative existed is not enough; Plaintiffs must present evidence that the diacetyl-free butter flavors' risks, benefits, and costs were favorable. *See Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 637-38 (7th Cir. 2006) (stating that the fact that a safer product could be made does not mean the accused product was defective) (discussing *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 659 (7th Cir. 1998)). In the absence of such evidence, Plaintiffs cannot meet their burden to prove that Givaudan failed to exercise reasonable care under the circumstances as required by the IPLA. Therefore, summary judgment in favor of Givaudan is required on Plaintiffs' design defect claim.

## IV. **CONCLUSION**

For the reasons stated herein, Defendant Givaudan Flavors Corporation's Motion for Summary Judgment as to all Plaintiffs' claims based on design defect is **GRANTED**. The Court will enter judgment accordingly.

IT IS SO ORDERED.

Date: 10/18/2017

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to all registered attorneys of record via ECF.